# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

COLENE BUSH,

      Plaintiff,

      vs.                                                                                                  No.10-cv-00707 WPJ/ACT

THE CITY OF ALBUQUERQUE,
a municipal corporation; ALBUQUERQUE
POLICE DEPARTMENT; ALBUQUERQUE
CHIEF OF POLICE RAY SCHULTZ;
ALBUQUERQUE POLICE DEPARTMENT OFFICERS
ROBERT MARTINEZ, SR., JOHN CORVINO, and
JOHN WHISONANT in their individual capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

      THIS MATTER comes before the Court upon Motion for Summary Judgment on the Grounds of Qualified Immunity filed on March 8, 2011 by the Defendants Ray Schultz, Daniel Cafferkey, John Corvino, Robert Martinez and John Whisonant ("Individual Defendants") **(Doc. 27)**.  Having considered the parties' briefs and the applicable law, I find that Defendants' motion is well-taken and will be granted.

### Background

      Plaintiff was employed as a Police Cadet at the Albuquerque Police Department from October 12, 2009 through her termination on November 4, 2009.  She alleges discrimination and harassment based on age and gender, and retaliation for making a complaint with the City of Albuquerque Human Rights Office regarding her employment at the Police Academy

("Academy"). Plaintiff asserts that while Defendants admit older females to the Academy pursuant to fair and rigorous standards, Defendants have a pattern and practice of ensuring that older female cadets do not graduate from the Academy.

Count I of the complaint alleges violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA") and the New Mexico Human Rights Act, NMSA § 28-1-10 *et seq*. ("Human Rights Act"); Count II alleges discrimination on the basis of sex under Title VII and the Human Rights Act; Count III asserts a claim of retaliation in violation of the ADEA, Title VII and the Human Rights Act; Count IV alleges a violation of the New Mexico Whistleblower Protection Act; Count V asserts a violation of equal protection pursuant to 42 U.S.C. § 1983 under the 14th Amendment; and Count VI[1] alleges a violation of conspiracy under 42 U.S.C. § 1985(3).

Title VII claims in Counts I, II and III are alleged against only the City of Albuquerque,[2] but against all Defendants for claims brought under the Human Rights Act in those counts. Count IV is asserted only against the City and Defendant Schultz. Count V is asserted against Defendant Schultz in his official capacity and also against Defendants Cafferkey, Corvino, Martinez and Whisonant; Count VI is asserted against Defendants Cafferkey, Corvino, Martinez and Whisonant.  The instant motion seeks dismissal of only the Equal Protection claim in Count V and the §1985(3) conspiracy claim in Count VI.

---

[1] Plaintiff's errors in the chronology of Counts in the Complaint has led to some confusion.  Count VI should be numbered as Count IV, and there are two Count V's. Defendants refer to the latter as a "misnumbered Count V." The Court lists the Counts in the correct consecutive order.

[2] The Albuquerque Police Department was dismissed as a party defendant by stipulation of the parties.  Doc. 21.

**I.	Legal Standard**

Defendants have asserted the defense of qualified immunity. The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Prager v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir.1999) (internal quotations omitted). In challenging this defense, Plaintiff must demonstrate (1) that the law was clearly established when the alleged violation occurred, and (2) that Defendants' alleged conduct violated the law. *Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir.1991). Plaintiff has the burden to establish that the contours of the asserted right are "sufficiently clear such that a reasonable official would understand that what he is doing violates that right." *Id.* If Plaintiff meets this burden of showing that Defendants' conduct violated clearly established law, Defendants must then satisfy the usual summary judgment standard of showing that no material facts are in dispute and that they are entitled to judgment as a matter of law. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir.2002).

**II.	Undisputed Facts**[3]

Plaintiff is a 49 year-old female. She was employed as a police cadet by the City of Albuquerque ("City") with the Albuquerque Police Department ("APD") in the 104th cadet class from October 12, 2009 to November 4, 2009. Ray Schultz was the Chief of Police during the relevant time period. Defendants Cafferkey, Corvino, Martinez and Whisonant were instructors at the APD Academy (the "Academy").

The Academy is a paramilitary training institution and uses many training methods

---

[3] The factual narrative is supported by exhibits submitted by the parties, including the Affidavit of Daniel Cafferkey, filed as a separate document (Doc. 29).

common to military boot camps, such as obedience to chain of command, responsibility for other officers' safety and team work conveyed through rigorous physical training. The learning environment is purposefully stressful, with built-in waves of recovery.

Plaintiff contends that she was discriminated and retaliated against because of her age and gender. She filed her EEOC Charge of Discrimination on December 29, 2009 against Defendants Corvino, Martinez and Whisonant. Ex. 1. According to the EEOC charge, there is a general practice in the Academy of discrimination against older female cadets and a concerted practice of ensuring that older female cadets do not graduate from the Academy.

Plaintiff was terminated on November 4, 2009. Of the 58 cadets who started the 104th Cadet Class, 35 graduated. Of the 58 cadets who started the 104th Cadet Class, 16 were female. Of those 16 female cadets who began the 104th Cadet Class, 9 graduated. Plaintiff was the only female cadet over 40 in the 104th Cadet Class. Other female cadets in the 104th Cadet Class graduated.[4]

## Discussion

Defendants contend that they did not violate Plaintiff's constitutional or statutory rights, and that the law relevant to Plaintiff's claims was not clearly established. The Court limits its discussion only to the relief requested by Defendants, that is, dismissal of Plaintiff's Equal Protection claim in Count V and the conspiracy claim in Count VI. Thus, the Court offers no opinion on the generic arguments regarding age discrimination which belong to Count I (*see*

---

[4] These factual statements are undisputed. The Court assumes that the statement "[o]ther female cadets in the 104th Cadet Class graduated" does not mean that *all* female cadets graduated, given that it is also undisputed that only 9 of the 16 female cadets graduated from the Academy. However, based on the undisputed fact that Plaintiff was the only female cadet over 40, and that some female cadets did not graduate, one can conclude that female cadets younger than Plaintiff did not graduate from the Academy.

Resp. at 6; Reply at 3) because they are outside the scope of this motion.

**I.      Equal Protection**[5]

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV.  It is "triggered when the government treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir.1991).  Plaintiff alleges violations of the Equal Protection Clause based on her status as an older woman.  Compl., at 15 (Count V, ¶ 4); Undisp. Fact No. 10 (Doc. 28 at 4: "Plaintiff believes that she was discriminated and retaliated against because of her **age and gender**.") (emphasis added).  Thus, as part of her Equal Protection claim, Plaintiff must show that similarly situated persons were treated differently.  *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004) (comparison to others similarly situated "distinguishes the Equal Protection Clause from the Due Process Clause") (citing *Ross v. Moffitt*, 417 U.S. 600, 609 (1974)).  This means that Plaintiff must present evidence at summary judgment that she was treated less favorably than a woman outside of the protected class: women younger than 40 years of age or male cadets.

The parties seem to be confused about what kind of evidence satisfies the "similarly

---

[5] It appears that the Tenth Circuit has followed other circuits in holding that age discrimination claims brought under § 1983 (which would include equal protection violations) are preempted by the ADEA.  *Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir. 1998) (plaintiff's equal protection claim defeated by her assertion of an ADEA claim).  Defendants did not raise the issue at all.  The court in *Migneault* did not address whether such exclusivity is a jurisdictional question, nor was the holding framed in jurisdictional terms.  In that case, the Tenth Circuit concluded that defendant was entitled to qualified immunity on the equal protection claim under § 1983.  For that reason, the Court proceeds to address Plaintiff's equal protection claim here on its merits.

situated" question.  Defendants take the position that the "similarly situated" comparison is made with regard to older women, or women inside the protected class:

> Plaintiff has offered no evidence, and can offer no evidence, that similarly situated individuals were discriminated against in a similar way. There were no other female [sic] **over the age of forty** in her cadet class
.
Doc. 28 at 8 (emphasis added).   This approach begs the central question of whether *younger* women were treated differently in the Academy's boot camp.  It is irrelevant whether Plaintiff was treated less favorably than other older females; what matters is a comparison in treatment to younger women, since that is the group she alleges was treated more favorably. *See Block v. Kwal-Howells, Inc*., 92 Fed.Appx. 657, 660 (10th Cir.2004)(unpublished decision) ("The burden is on the plaintiff to show she is similarly situated to the employee with whom she is comparing herself.") (citing *Velasquez v. Frontier Medical Inc*., 375 F.Supp.2d 1253, 1271 (D.N.M.,2005); *Barfoot v. Public Service Co. of Colo*., 377 Fed.Appx. 751, 2010 WL 1784663 (10th Cir. 2010) (ADEA plaintiff failed to identify similarly situated, **younger** coworkers who were accommodated for their medical work restrictions instead of losing their jobs, as required to support ADEA claim) (emphasis added); *see also Hinds v. Sprint/United Management Co*., 523 F.3d 1187 (10th Cir. 2008) (The fact that an employer scrutinizes two departments during a reduction in force and decides to retain similarly situated **younger employees** while discharging an **older employee** gives rise to an inference of discrimination under the ADEA) (emphasis added).

    Plaintiff, too, misses the mark offering in trying to rebut Defendant's position that no evidence has been offered to satisfy the "similarly situated" question.  She points to certain additional material facts ("AMF") ¶¶ 3, 7, 8, 11, 12, 13 and 16 which purportedly show a "pattern of harassment and less favorable treatment by Academy instructors both of older Cadets

and of female Cadets. Doc. 31 at 7. However, these examples (all of which are statements from

Plaintiff's own affidavit) are either immaterial or inadmissible:

- AMF ¶ 3 (referencing Ex. A, ¶ 18), relies on hearsay[6] by a "substantially younger" female cadet who said she had not done well in the running drills but was still graduating from the Academy. The materiality of this "fact" is unclear because there is no evidence that Plaintiff was terminated from the program because on her performance in the running drills alone;

- AMF ¶ 7 (referencing Ex. A, ¶¶ 31, 32 and 37) concern negative statements made to male Cadet Ruiz, who was over 40 years old, and female Cadet Medina, who was 39 years old. Neither Ruiz nor Medina belong in categories with which Plaintiff should compare herself for purposes of an Equal Protection claim. Plaintiff is claiming unfavorable treatment based on her age and gender. Ruiz is male, and Medina is not in the age-protected class because she is younger than 40.[7] Yet, both were allegedly treated as unfavorably as Plaintiff. This is the exact opposite of the kind of evidence Plaintiffs needs to demonstrate an equal protection violation. Further, none of the statements made by training officers suggest criticism based on Plaintiff's age or gender. In ¶ 31, for example, a training officer told Cadet Medina (a younger female cadet) that she was "just like Bush" and that "10 of you don't belong here" without specifying any traits of those ten cadets. In ¶ 33, Plaintiff asserts that one of the training officers, Officer Martinez, stated that he would "get rid of [her] for not keeping up"; that Plaintiff was a "loser . . . not worthy of being a police officer"; and that he "bet [his] " that Plaintiff would not make it to graduation.

---

[6] *See Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1082 n.5 (10th Cir. 1999) (at summary judgment, courts should disregard inadmissible hearsay statements contained in affidavits, as those statements could not be presented at trial in any form); *see also Lancaster v. Indep. Sch. Distr. No. 5, et al.*, 149 F.3d 1228, 1236 (10th Cir. 1998) (Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted . . . in opposition to, summary judgment.).

[7] Evidence that a female cadet who is 39 years old was also treated less favorably with harsh comments does not advance Plaintiff's case because a 39 year-old female is outside of the protected class. Such evidence does not indicate that younger female cadets were favored. *See Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008) (prima facie case of age discrimination requires, in part, that plaintiff be within the protected class of individuals 40 years or older); *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230 (4th Cir. 1982) (Replacement of 60-year-old by 35-year-old or even 45-year-old within protected class would be more suggestive of discrimination than replacement of 45-year-old by 42-year-old within protected class or **39-year-old outside it**); *Natale v. Town of Darien, Conn.*, 1998 WL 91073, 3 (D.Conn.,1998) (39 year-old plaintiff could not bring age discrimination claim under the ADEA).

Courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).  Here, I need not go further than addressing whether Plaintiff has shown any evidence of an Equal Protection violation. None of the statements or conduct described by Plaintiff in her Affidavit, either directed at her or other cadets, suggests less favorable treatment of her based on age and gender. Plaintiff has not presented evidence of a viable Equal Protection claim, and Defendants are entitled to summary judgment on Count V of the complaint.[8]

## II.     Conspiracy Under § 1985(3)

Count VI alleges that Defendants Corvin, Cafferkey, Martinez and Whisonant conspired to deny Plaintiff of equal protection of th law.  Liability under § 1983 is not a condition precedent to liability under § 1985(3); conspiring for the purpose of conspiring to deny a person of his civil rights is sufficient.  *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443 (10th Cir. 1990).

To establish an actionable conspiracy under § 1985(3), a plaintiff must prove that the conspiracy was motivated by "some racial or otherwise class-based discriminatory animus." *Id*. The essential elements of this type of claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir.

---

[8] Without an underlying constitutional violation, I need not address whether Defendants are liable under theories of supervisory or municipal. *See Butler v. City of Prairie Village*, 172 F.3d 736, 747 (10th Cir.1999) (municipal liability may not be imposed on an entity defendant where individual defendants are found to have committed no constitutional violation); *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992) (supervisory liability premised on the defendant-supervisor personally directing the violation or having actual knowledge of the violation and acquiescing in its continuance).

1993).

Plaintiff claims that there is evidence of a conspiracy, in that Corvino and Whisonant directly reference age when informing Plaintiff that she did not belong at the academy, and that Martinez, Corvino and Whisonant all subjected Bush and other older Cadets to harassment and other less favorable treatment that was directed at younger Cadets.  They met together with Plaintiff to encourage her to resign, despite her generally positive record at the Academy.  Finally, Plaintiff was called into a meeting with Martinez, Whisonant and Cafferkey, at which she was terminated.

As evidence Plaintiff offers statements from her own affidavit.  Some statements reflect personal observations; others are statements purportedly made by the Defendants.  The Court has reviewed each of Plaintiff's additional material facts ("AMF") which refer to statements in the affidavit and has determined that these statements do not constitute evidence of a conspiracy to deprive Plaintiff of her equal protection rights.  This evidence is the following:

A.  <u>Direct Reference to Plaintiff's Age</u> (AMF 2, 4 and 9, referring to ¶¶ 17, 19 and 24 in Affidavit, Doc. 31-1)

¶ 17: On Oct 15, 2010, Officer Fritts pulled Plaintiff aside and said "You and I are close to the same age, and it would be hard for me to do this, so why are you trying?"  Officer Aragon was also present.

¶ 19: On October 19, 2010, a group of unknown instructors, commanders and lieutenants came to watch the morning workout. On the run, Plaintiff started to fall behind. Defendant Corvino ran alongside Plaintiff and yelled, "How old are you cadet?" When Plaintiff told him she was 48, Corvino "barked" "what are you doing here?!"  The other cadets had to do push-ups as punishment during their run until Plaintiff caught up.  Corvino told the other cadets that it was Plaintiff's fault that they were doing push-ups.

¶ 24: On October 22, after an early morning run, Defendant Whisnenant told Plaintiff while she was running, "You are too mature for this and you know it.  Do both of us a favor and resign now.  This is not for you." Later that day, cadets were taken to box at the gym, and were matched by experience and weight, and females fought females.  Plaintiff beat her female opponent and was told by other cadets that she was "like a pit bull."

Comments made by Officers Fritts and Aragon are not relevant to liability on the part of the Individual Defendants. While ¶¶ 19 and 24 contain age-related comments, there is no suggestion of any conspiracy on the part of the Defendants. Instead, the comments are typical fare for boot-camp harassment. *See Richardson v. City of Albuquerque*, 857 F.3d 727, 730 (10th Cir. 1988), *overruled on other grds by Melton v. City of Oklahoma City*, 928 F.2d 920 (10th Cir. 1991) (noting harassment as part of police cadet training program). Also, being viewed as a "pit bull" in a boxing match by fellow cadets where Plaintiff was matched by experience, weight and gender has no relevance to evidence of Plaintiff's performance when she was not so matched.

B.  <u>Comments Subjecting Plaintiff to Less Favorable Treatment</u> (AMF 5, 7, 8, 9, 11, 13, referring to ¶¶ 17, 20, 21, 24, 27, 32, 33, 35, 43 in Affidavit)

¶ 23: younger, smaller females were not chastised for being unable to lift heavier weight.

¶31: On October, 26, Defendant Martinez pulled Plaintiff and Cadet Ruiz in front of the class and called them both "dead weight." Martinez then made them both carry around a 200+ life-sized dummy wherever they went. Cadet Medina helped them carry the dummy around, and Medina and Plaintiff were specifically told that "we will find technicalities to dismiss you!

¶¶ 32, 37: On October 29, Defendant Martinez told Plaintiff that she was a "disgrace" to the Academy" and yelled at her because Plaintiff's classmates had to carry a dead-weight dummy back to class with them while Plaintiff was using the bathroom; Plaintiff was told that in a vote regarding which cadets were worthy to wear the word "police" on their traffic vests, other cadets had voted against Plaintiff.

¶ 32-33: On October 28 and 29, Plaintiff was told by Defendant Martinez that Plaintiff was being "insubordinate" when she could not keep up for traffic duty, that "they would 'get rid of me for not keeping up'" and that the class would be punished because she could not keep up. Plaintiff states that she was paraded in front of the other cadets by Martinez as a "loser" who "was not worthy of being a police officer"; Martinez also stated that he would bet his that Plaintiff would not make it to graduation.

The Court finds no conspiracy related to a deprivation of Plaintiff's equal protection rights in any of these comments. If younger females were not chastised for being unable to lift heavier kettle balls, when Plaintiff satisfactorily completed the assigned task, there was no opportunity to treat Plaintiff less favorably. Comments made to both Cadet Medina (who is not over 40) and Plaintiff do not constitute evidence of less favorable comments to an older individual. Finally, evidence that fellow cadets voted that Plaintiff was not worthy of being a

10

police officer undercuts Plaintiff's argument that Defendants treated her less favorably.[9] While

Plaintiff bases her Equal Protection claim on both age and gender, she offers no specific

evidence that male cadets were not treated to similar hazing or verbal abuse.

III.  Comments Indicating Defendants Acted in Concert (AMF 15 and 16, referring to ¶¶ 15,16 in Affidavit)

¶43: On November 3, Plaintiff was called into the instructors' office.  Defendants Whisonant and Martinez were present.  Plaintiff was told to resign or they would terminate her and noted that she did not "make an effort" but that she had "heart."   They also acknowledged that they were "reaching a state of borderline abuse" with her, but that she did not have what it takes.

¶44: On November 4, Plaintiff returned to the Academy.  She and Cadet Medina were pulled out of class to get their things.  Defendants Cafferty, Whisonant and Martinez told Plaintiff that it was frustrating for them to see that she had returned to the Academy that day instead of resigning.  In response to Plaintiff's question as to why she was being terminated, Defendant Cafferkey told her that she was "holding the class back."

The Court finds no suggestion of a conspiracy here to deprive Plaintiff of her equal

protection rights or to suggest class-based discriminatory animus.  The fact that several

Defendants were present at the termination meeting in itself does not suggest conspiracy on their

part.  One would expect that several instructors would be present at a meeting that was going to

result in a termination of a cadet.  Other than Defendant's presence together, Plaintiff offers no

comments or conduct which would infer that she was being terminated in a way that was less

favorable than male cadets, or younger cadets. Plaintiff herself concedes that the instructors all

cadets "to keep the pace set by the instructors, **regardless of age or gender**."  Ex. A, ¶ 15

(emphasis added); *cmp.*, *Richardson*, 857 F.2d 727, 730 (10th Cir. 1988) (denying motion for

new trial where instructors harassed female cadet, but where evidence showed that all police

---

[9] Plaintiff states that she "was told" about the vote.  However, she offers no evidence at all that the vote was fabricated by Defendants.

cadets received harassment as part of the "high-stress training program regardless of their age or sex"). The Equal Protection clause ensures *equal* treatment under the law; it does not mandate special treatment designed to give an older plaintiff a "leg up."

Plaintiff disputes Defendants' contention that she was given the option to resign, improve her fitness level, and return to the next Academy class. Plaintiff claims that she was never given that option. However, such a dispute is not material to Plaintiff's claims in Counts V or VI. The Equal Protection clause does not require that Plaintiff be afforded a second shot at graduating from the Academy, unless younger cadets were being given second chances. However, Plaintiff offers no evidence of this. In fact, the evidence suggests otherwise, since Cadet Medina, who was not over 40, was also segregated for termination and subjected to treatment and comments similar to what Plaintiff allegedly experienced.

Thus, because Plaintiff has presented no evidence of a crucial element in Count VI – evidence of a conspiracy – Defendants are entitled to summary judgment on that claim as well. The Court's conclusion rests on the finding that Plaintiff has not presented evidence of a constitutional violation, which is one part of a qualified immunity analysis. However, I would also note that the backdrop of this case might also allow a finding that Defendants are entitled to qualified immunity because it is not clearly established that Plaintiff has a right to be free from age-related comments regarding her fitness level in the context of police academy training; also, it is not clearly established that a reasonable official would know that age-related comments which are made as part of boot-camp training, constitute a violation of a female cadet's equal protection rights. Defendant points to *Richardson* which would support such the conclusion that such harassment is part of the high stress imposed on cadets during police officer training. Plaintiff expresses some incredulity that Defendants would argue that the law is not clearly

established, yet offers no case law holding that Plaintiff possessed such a clearly established right. In fact, *Richardson* would suggest that such harassment is part of the high-stress imposed on cadets during police officer training.

## Conclusion

In sum, I find and conclude that Plaintiff has not presented evidence of a viable Equal Protection claim, and Defendants are entitled to summary judgment on Count V of the complaint. In addition, Plaintiff has not presented evidence of a conspiracy to deprive her of her equal protection rights, and Defendants are entitled to summary judgment on Count VI as well.

**THEREFORE,**

**IT IS ORDERED** that the Motion for Partial Summary Judgment on the Grounds of Qualified Immunity filed by the Defendants Ray Schultz, Daniel Cafferkey, John Corvino, Robert Martinez and John Whisonant ("Individual Defendants") **(Doc. 27)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE